UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

ETHEREUM VENTURES LLC,

                              Plaintiff.

        against-                                    Case No.:  1:19-cv-7949 (LLS)

CHET MINING CO LLC and CHET
STOJANOVICH,

                              Defendants.

_____

# PLAINTIFF'S MEMORANDUM OF LAW

## FOR INQUEST FOLLOWING DEFAULT JUDGMENT

Benjamin F. Neidl
E. Stewart Jones Hacker Murphy LLP
*Attorneys for the Plaintiff*
28 Second Street
Troy, N.Y.  12180
(518)274-5820
Email: Bneidl@joneshacker.com

## PRELIMINARY STATEMENT

Plaintiff Ethereum Ventures LLC ("Ethereum") by and through its undersigned attorneys, respectfully submits this memorandum of law for the inquest directed in the Default Judgment issued by the Court on July 9, 2021 (ECF Doc. #51), as directed by the Court's Order dated July 12, 2021 (ECF Doc. #53).

## BACKGROUND

The pertinent factual background is recited in the accompanying affidavit of JohnPaul Baric, the president and owner of Ethereum. In the interest of avoiding duplication, those facts can be briefly summarized here. Ethereum is in the cryptocurrency mining business. In 2019, Ethereum ordered two batches of cryptocurrency mining computers from the defendants: (1) a batch of 912 Bitmain model S9 Antminers; and (2) a batch of 67 Bitmain model S17s.

Ethereum paid the defendants $173,280 for the first batch (in two wire transfers), and paid $39,970.94 for the second batch (by transferring the defendants 5.69 Bitcoin). The defendants failed to deliver any of the miners in either batch. Ethereum demanded delivery and then demanded a refund. Near the end of May, 2019, the defendants refunded $35,650.49 only, and have never refunded any additional amount. Thus, Ethereum's net loss on the purchase price that it paid is $182,247.94 ($173,280 paid to defendants for the first order + $39,970.94 paid to defendants for the second order – the refund of $31,003 = $182,247.94). (Baric Affidavit ¶¶4-16.)

As discussed more fully in the Baric Affidavit, Ethereum also incurred $196,536.00 in additional costs purchasing substitute miners from an alternative supplier (Id. ¶¶21-22) and lost profits in the amount of $255,036.28, for the period of time that Ethereum lost the opportunity to use the miners to mine Bitcoin (until Ethereum's alternate machines arrived) (Id. ¶¶24-27).

**ARGUMENT**

**POINT I**

**NEW YORK LAW SHOULD GOVERN THIS CASE, BUT THE RELEVANT LAWS OF NEW YORK AND NORTH CAROLINA ARE THE SAME.**

At all relevant times, the plaintiff Ethereum was a North Carolina limited liability company with a principal place of business in North Carolina.  Defendant Chet Stojanovich is an individual who, at all relevant times, has resided in New York.  Defendant CMC is a Wyoming limited liability company which, at all relevant times, maintained its principal place of business at Chet Stojanovich's residence in New York.  In theory, this presents a question of whether New York or North Carolina law applies.

"Where a district court sits in diversity, it must apply the choice of law rules of the forum in which it sits." Federal Ins. Co. v. SafeNet, 817 F. Supp. 2d 290, 301 (S. D.N.Y. 2011).  "In contract disputes, New York courts apply the 'center of gravity' or 'grouping of contacts' theory of conflict of laws, which requires a court to apply 'the law of the place which has the most significant contacts with the matter in dispute.'" Id.  This includes consideration of such factors as (1) the place of contracting, (2) the place of negotiation and performance, (3) the location of the subject matter of the contract, and (4) the domicile or place of business of the contracting parties. O'Neill v. Yield House, 964 F. Supp. 806, 809 (S.D.N.Y. 1997).

In this case, the usual factors considered are somewhat evenly distributed.  JohnPaul Baric of Ethereum and Chet Stojanovich negotiated their transaction by phone and email "over state" lines as it were.  (Baric Aff. ¶4.)  Therefore, the "place of negotiation" was virtual and occurred in both jurisdictions.  The "place of performance" was also bilateral, in that Stojanovich agreed from New York to deliver the machines, but the machines were ultimately supposed to be delivered to a site in Iowa where Ethereum intended to operate them.  The "place of contracting" arguably tips

2

in favor of New York, because Chet Stojanovich generated the written order invoices that memorialized Ethereum's order of the two batches of crypto miners, and emailed them to Ethereum from his domicile in New York.  (Baric Aff. ¶¶9, 13.)  The defendants also received Ethereum's payments in New York and have continued to hold those monies here (if they have not already been spent from here).  (Baric Aff. ¶¶8, 11, 14.)  Therefore, under the circumstances, Ethereum respectfully submit that New York has the most significant contacts with the transactions, and New York law should apply.

However, in this particular case the question is academic.  This case concerns transactions for the sale of goods, which is governed by Article 2 of the Uniform Commercial Code.  The relevant provisions of the UCC (discussed below) are identical in New York and North  Carolina. Therefore, there is no conflict of laws.

## POINT II

### ETHEREUM IS ENTITLED TO THE RECOVER AS DAMAGES THE UNREFUNDED PORTION OF ITS PURCHASE PRICE.

The transaction in question was for the purchase of goods.  Accordingly, it was and is governed by the Uniform Commercial Code.  See N.Y. UCC §2-102; see also North Carolina General Statutes ("N.C.G.S.A.") §25-2-102.

Section 2-711(1) of the Uniform Commercial Code provides, in relevant part:

> ***Where the seller fails to make delivery*** or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (Section 2-612), ***the buyer may*** cancel and whether or not he has done so may ***in addition to recovering so much of the price as has been paid***
>
> (a) "cover" and have damages under the next section as to all the goods affected whether or not they have been identified to the contract…

3

(Emphasis added.)  The New York and North Carolina versions of this section are identical.
Compare N.Y. UCC §2-711 and N.C.G.S.A. §25-2-711.

The emphasized language—"in addition to recovering so much of the price has been paid"—means that as part of the damages, the plaintiff may recover a refund of the price it paid for the undelivered goods.  Federated Retail Holdings v. Sanidown, 2010 WL 5298113, at *7 (S.D.N.Y. 2010)(applying N.Y. UCC).  See also Kashi v. Gratsos, 790 F.2d 1050, 1056 (2d Cir. 1986)(applying New York UCC); Allied Semi-Conductors v. Pulsar Components, 907 F. Supp. 618, 630 (E.D.N.Y. 1995)(applying New York UCC); Pittman v. Henry Moncure Motors, 2015 WL 5123896, at *14 (N.C. Ct. App. 2015)(applying North Carolina UCC).

In this case, Ethereum paid the defendants the net amount of $177,600.45 to purchase the cryptocurrency miners that the defendants never delivered.  (Baric Affidavit ¶¶12-20.)  Inasmuch as UCC §2-711(1) allows the plaintiff to recover "so much of the purchase price as has been paid," Ethereum is entitled to judgment for the $177,600.45 sum.

## POINT III

### ETHEREUM IS ALSO ENTITLED TO RECOVER AS DAMAGES THE ADDITIONAL LOSS THAT IT INCURRED TO PURCHASE THE GOODS FROM AN ALTERNATIVE SOURCE ("COVER" DAMAGES).

As noted above, UCC §2-711(1) allows a frustrated buyer of undelivered goods to recover not only a refund of the purchase price, but also "cover" damages pursuant to UCC §2-712. Section 2-711 specifically provides that the purchase price recapture is "in addition to" the other remedies, such as "cover," listed directly under it.  See also Kashi, 790 F.2d at 1056 (recognizing that a frustrated purchaser is entitled to damages for the paid purchase price plus the other remedies listed in §2-711[1][a] and [b])(applying New York UCC); Allied Semi-Conductors, 907 F. Supp. at 630 (holding that UCC §2-711[1][a] allows an aggrieved buyer a "return of the purchase price

as well as other remedies such as cover")(applying New York UCC); Harrington Mfg. v. Logan Tontz Co., 253 S.E.2d 282, 286 (N.C. Ct. App. 1979)("In addition to allowing the recovery of so much of the purchase price as has been paid … [under §2-711] the buyer is entitled to "cover" by procuring substitute goods for those found to be nonconforming")(applying North Carolina UCC).

"Cover" damages are defined in UCC §2-712.  The New York and North Carolina versions of §2-712 are identical to one another.  Compare N.Y. UCC §2-712 and N.C.G.S.A. §25-2-712. That section provides that the frustrated buyer "may 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller."  Section 2-712 also provides that the measure of damages for cover is:

> The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined (Section 2-715), but less expenses saved in consequence of the seller's breach.

Id.

In this case, Ethereum promptly purchased S9 miners from an alternate supplier, after the defendants failed to deliver.  Defendant Chet Stojanovich promised Ethereum that the defendants would deliver Ethereum's miners by "the middle of May" 2019.  The defendants failed to deliver by that time, and in fact ceased communications with Ethereum in May 2019.  Ethereum then ordered S9 miners from another seller (DB Technology) on May 28, 2019.  (Baric Affidavit ¶¶21 – 23.)  The price that the defendants had offered (and failed to deliver upon) was considerably below market value for the would-be batch of 912 S9 miners.  Purchasing from the alternate supplier cost Ethereum an extra $196,536.00 in purchase price above and beyond the contract price with the defendants.  (Id. ¶22.)  Accordingly, the Ethereum is entitled to an additional $196,536.00 in damages for cover cost, pursuant to UCC §§2-711(1) and 2-712.

**POINT IV**

**ETHEREUM IS ALSO ENTITLED TO DAMAGES FOR
LOST PROFITS, FOR THE PERIOD OF TIME THAT IT
WAS DEPRIVED THE MINERS.**

As indicated above, the "cover" statute (UCC §2-712) allows the buyer also to recover "any incidental or consequential damages as hereinafter defined." Consequential damages include, among other things, "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." UCC §2-715(2)(a). The New York and North Carolina versions of this section are identical to one another. <u>Compare</u> N.Y. UCC §2-715 and N.C.G.S.A. §25-2-715.

Under this section, "Consequential damages include lost profits." <u>Federated Retail Holdings</u>, 2010 WL 5298113, at *8 (applying New York UCC), <u>citing</u> <u>RIJ Pharmaceutical v. Ivax Pharmaceuticals</u>, 322 F. Supp. 2d 406, 415 (S.D.N.Y. 2004); <u>see</u> <u>also</u> <u>B.B. Walker v. Ashland Chemical</u>, 474 F. Supp. 651 (M.D.N.C. 1979)("The lost profits claims by Harrelson likewise fall under the ambit of incidental or consequential damages, and therefore are covered by N.C.G.S. s 25-2-715[2][a]")(applying North Carolina UCC).

In this case, Ethereum incurred lost profits as a result of the breach. If the defendants had delivered the miners as promised, Ethereum would have operated them to mine Bitcoin and make money. However, as a result of the defendants' breach, Ethereum lost the opportunity to do that for approximately three-and-a-half months. Specifically, the substitute miners that Ethereum ordered from DB Technologies on May 28, 2019 were not delivered until September 15, 2019. Therefore, from the end of May 2019 until September 15, 2019, lost $255,036.28 in profits that it would have earned if it had had the miners during that time, that it had ordered from the defendants. (Baric Affidavit ¶¶24-27.) There cannot be any serious doubt that the defendants "had reason to

6

know" that Ethereum stood to incur significant lost profits if it did not receive the machines.  UCC §2-715(2)(a).  Cryptocurrency mining computers are used for one purpose: to mine Bitcoin for profit.  (Baric Affidavit ¶5.)  J.P. Baric of Ethereum communicated with defendant Stojanovich during negotiations, and communicated that Ethereum was a crypto mining business and intended to use the machines to mine Bitcoin.  (Id.)  And, since Ethereum ordered *hundreds* of miners from the defendants in this transaction, it would have been obvious to Stojanovich that Ethereum was a commercial mining operation, and that the loss of an opportunity to use mining computers due to non-delivery would cost Ethereum income.  Therefore, Ethereum is entitled to a damages award of $255,036.28 for lost profits.

## POINT V

### ETHEREUM IS ENTITLED TO PREJUDGMENT INTEREST AT THE RATE OF 9% PER YEAR.

A federal court sitting in diversity applies the pre-judgment interest law of the forum state, over non-federal claims.  See Quincy Fire Ins. Co. v. N.Y. Central Mut. Fire Ins. Co., 89 F. Supp.3d 291 (N.D.N.Y. 2014).  In New York claims for breach of contract accrue pre-judgment interest at the rate of 9% per year.  CPLR §5004.

As set forth above, Ethereum's principal damages total $633,820.22 as follows:

| | |
|---|---|
| Compensation for the paid purchase price: | $177,600.45 |
| "Cover" damages: | $196,536.00 |
| Lost profits: | $255,036.28 |
| Total Principal Damages = | **$629,172.73** |

At 9%, annual interest on the principal damages sum of $629,172.73, is $56,625.55 ($629,172.73 x 9% = $56,625.55).  The per *diem accrual* of interest at that rate is $155.14 per day ($56,625.55 annual interest divided by 365 days = $155.14).  Therefore, the plaintiff is entitled to

pre-judgment interest at the rate of $155.14 per day from August 26, 2019 to the date the Court awards the monetary default judgment, which shall be reflected in the judgment.

## **CONCLUSION**

The Court should enter a money judgment in favor of the plaintiff against defendants Chet Mining Co. LLC and Chet Stojanovich, jointly and severally, in the principal amount of $633,820.22, plus pre-judgment interest from August 26, 2019 through the date of judgment, at a rate of $156.28 per day.

Dated:  Troy, New York
         August 12, 2021

Respectfully submitted,

E. STEWART JONES HACKER MURPHY LLP


By: Benjamin F. Neidl
*Attorneys for the Plaintiff*
28 Second Street
Troy, N.Y.  12180
(518)274-5820
Email: Bneidl@joneshacker.com